UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

PATRICIA GONZALEZ and LESHA
ROSARIO,

     Plaintiffs,

v.

JAMES BATMASIAN, an individual d/b/a
Investments Limited and individually and
MARTA BATMASIAN, an individual d/b/a
Investments Limited, and individually,

     Defendants.
_____/

## COMPLAINT

Plaintiffs, Patricia Gonzalez and Lesha Rosario (hereinafter referred to as "Plaintiffs", unless referred to individually), Lesha Rosario ("Rosario"), and Patricia Gonzalez ("Gonzalez"), through their undersigned attorneys, file this Complaint against the Defendants, James Batmasian, d/b/a Investments Limited and individually and Marta Batmasian, d/b/a Investments Limited and individually (hereinafter, "Defendant"), and allege:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA"). Defendant has issues with respect to paying overtime and routinely makes employees work off of the clock and refuses to pay overtime to numerous employees who are entitled to it, being under the delusion that it pays for part of their compensation by the issuance of a payroll check in the name of LSA Management, Inc. and by paying what it considers to be a "salary" similar pay every two weeks, but because it is subject to

being docked for the quality and quantity of work performed, it is not really a salary, and Defendants commonly refers to the "salary" as hourly pay.

2. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

3. Venue is proper for the United States District Court for the Southern District of Florida because:

(a) Plaintiffs, Rosario, and Gonzalez were employed in the Southern District of Florida by the Defendant, which at all material times conducted, and continue to conduct, business in the Southern District of Florida; and

(b) Additionally, venue lies pursuant to 28 U.S.C. § 1391(b) & (c), because the acts that give rise to Plaintiffs', Rosario's, and Gonzalez's claims occurred within the Southern District of Florida, and because the Defendant is subject to personal jurisdiction there.

## CONDITIONS PRECEDENT

4. Plaintiffs, Rosario, and Gonzalez have complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5. Plaintiffs reside within the Southern District of Florida. During all relevant times, James and Marta Batmasian own a fictitious name called "Investments Limited". The Batmasians considered Plaintiffs Gonzalez and Rosario an employee of Investments Limited, and thus their employers were James Batmasian and Marta Batmasian, because Investments Limited is a fictitious name owned 50/50 by James Batmasian and Marta Batmasian, and as the owners of the fictitious name, the Batmasians are liable because they are in fact the legal responsible parties for its actions, and because the Batmasians paid Rosario and Gonzalez their wages and other compensation. The

Defendants took a credit/deduction/exemption on their income tax returns for the years 2012-15 for the wages paid to the Rosario and Gonzalez.

6. Defendant James Batmasian is an individual who owns and operates Investments, Limited with his wife Marta Batmasian, who, at all times material, conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the State of Florida. James Batmasian is a Harvard-educated former attorney who also has a master's degree in Business Administration from Harvard. Defendant Marta Batmasian is an individual who co-owns Investments, Limited with James Batmasian who, at all times material, conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the State of Florida. Marta Batmasian has a Master's Degree in Business Administration. James and Marta Batmasian share day-to-day operational control over Investments Limited.

7. Non-party LSA Management, Inc. is a Florida corporation, that the Batmasians solely own and control which does no business, has no revenue, no assets, and owns nothing, but which the Batmasians have somehow opened a bank account in the name of "LSA Management, Inc. c/o Investments Limited", which convinced a payroll company to issue payroll checks with the name LSA Management, Inc. printed on them, but which monies deposited into that account belong to the Batmasians. LSA Management, Inc., as a subchapter S, has never filed federal income tax returns, although S corporations are required to, and thus has never taken a credit/deduction/exemption for any wages paid to Rosario or Gonzalez, which demonstrates that the Batmasians are the real employers of Rosario and Gonzalez, and not LSA Management, Inc. LSA Management, Inc. is owned and controlled by James Batmasian, and he is (for at least the last five years) the sole officer and director of that entity and its registered agent. Concerning LSA Management, Inc., the LSA stands for a person's initials. LSA Management, Inc. did not file tax returns in the years 2010-15. LSA Management, Inc. is a S corporation. LSA Management, Inc.

does not own and has not owned any property. LSA Management, Inc. does not have and has not had any revenue. LSA Management, Inc. does not sell and has not sold anything. LSA Management, Inc. does not have and has not had any assets. LSA Management, Inc. does not have and has not had any liabilities.

8. Defendant James Batmasian and Marta Batmasian, are subject to the laws of the United States (including the FLSA) and of the State of Florida. The Batmasians have gross revenue which exceeds $500,000 for each of the past three (3) years, and as of December 31, 2010 claimed to have total assets $1,676,635,926, and it has only grown since then, and the vast majority of these assets consist of real estate owned by the Batmasians jointly or in the name of Marta Batmasian.

10. The Batmasians have two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. In order to obtain the financing, the employees made long distance phone calls and sent emails to individuals who reside out of the State of Florida regularly and recurrently. Over the last 3 years or so, there have been roughly 15 commercial leasing agents who have worked for the Batmasians. In the last three years, the commercial leasing agents have filled out numerous documents which state that they are employed by "Investments Limited".

11. For example, the Batmasians have 200-220 employees who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce) , and use cars and vehicles and gasoline when showing commercial and residential real estate, which vehicles and gasoline were manufactured outside the State of Florida.

12. Further, the Batmasians have a whole accounting team of employees (*e.g.*, James Baker (controller from 2006-13), Paul Bedoyan, Brenda Swain, and Nancy Tyson) who during

material times engaged in obtaining financing from outside the State of Florida, such as from Brookline Bank, John Hancock, Wells Fargo, and other such institutions, and James and Marta Batmasian (themselves employees) were involved in obtaining the financing, too.[1]

13. In order to obtain the financing, the employees made long distance phone calls and sent emails to individuals who reside out of the State of Florida regularly and recurrently.

14. The Batmasians enterprise also is involved in making long distance phone calls and emails with respect to the Batmasians loans, including one for $105,000,000 loan in July 2012.

15. The utilization of goods and materials manufactured outside the State of Florida and the contacts outside the State of Florida by the employees involved in obtaining financing were regular and recurrent, during all materials times, and a significant portion of the real estate holdings of the Batmasians are located in Massachusetts, which are financed and dealt with by their employees in Florida.

16. The loans in the above emails are for millions of dollars and generate significant paperwork and involvement among various employees, and the Defendant finances and refinances its properties frequently, and when the Defendant has issues with loans, as on the $105,000,000 loan with Wells Fargo.

17. Additionally, Plaintiffs are entitled to individual coverage, as they regularly and recurrently made calls to individuals (former tenants and prospective tenants across state lines (who either resided for part of the year outside the State of Florida or who had previously leased space from the Batmasians)) and thus they participated in the actual movements of goods or services and commerce across state lines.

---

[1] The Defendant disputes that James Baker was their controller and are taking the position that he was their chief financial officer, but Baker was never listed as a chief financial officer on any corporate or partnership papers filed with the State of Florida, and witness George Sigalos knows that Baker was the controller and not the chief financial officer, because the Batmasians introduced him to Mr. Baker as Baker being the controller on more than one occasion.

18. Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act. Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

19. The Batmasians have the power to hire and fire and exercise it regularly, as they fired James Baker.

20. Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.

21. During all times relevant to this action, Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

22. Plaintiffs are all "employee[s]" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

23. Plaintiffs were non-exempt employees of Defendant who were subject to the payroll practices and procedures described in Paragraphs 46, 47, and 48 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.

24. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Plaintiffs, and all those similarly situated, performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

25. Within the past three (3) years, the Rosario and Gonzalez worked for the Defendant classified as a legal assistant and property manager respectively, to facilitate the Defendant's real estate business.

6

**Lesha Rosario**

26. Rosario was a legal assistant who was paid hourly, but for most of her overtime hours she was made to work off of the clock and not paid, as Jason Lazar would instruct her to clock out but keeping working because the Batmasians were on his back about too much overtime being paid out.

27. Rosario worked for the Defendant in this position from December 2010 – December 2012.

28. Rosario was an employee of the Defendants, who reported to James Batmasian, Marta Batmasian, Jason Lazar, Nancy Tyson, Jacqui Wyatt, and James Baker, and she performed whatever tasks they told her to.

29. Rosario filed a Notice of Consent to join the case currently pending *Blake v. James Batmasian, et al.*, Case No. 15-81222 in the Southern District of Florida on or about August 6, 2015 by filing a Notice of Consent. The Court issued a ruling holding that Rosario could not prosecute her claims in that case on or about September 15, 2016 and also did not allow her to intervene. *See* [D.E. 274]. Rosario requests that the statute of limitations in this case run back in time 3 years from the date that she submitted her Notice of Consent in the *Blake* case (August 6, 2015), because the filing of a notice of consent tolls the statute of limitations.

**Patricia Gonzalez**

30. Gonzalez was given the title property manager, and she worked in the office of one of Defendant's commercial buildings, but she did not manage and was not a manager.

31. Gonzalez reported to James Batmasian and Daron Tersakyan and had to do whatever they told her to do.

32. While working with the title "property manager", Gonzalez performed largely rote data entry and data processing tasks and received questions from tenants, largely forwarding them to

Batmasian and Tersakyan to deal with, and she did not have the ability to hire or fire anyone (nor did she hire or fire anyone—Batmasian and Tersakyan did that), and she did not regularly and customarily direct the work of two or more workers, much less full-time workers, and basically did whatever she was told.

33. While working with the title "property manager", Gonzalez was also paid an hourly wage for the first 40 hours worked but was given no compensation for her overtime hours.

34. While working with the title "property manager", Gonzalez's primary duty was not the performance of non-manual office work directly related to management policies of general business operations of the employer or its customers.

35. Moreover, Gonzalez's performance of her primary duty did not include work requiring the exercise of discretion and independent judgment.

36. It is clear that Gonzalez's tasks did not pertain to the administration of the Defendant's business but rather pertained to production.

37. Gonzalez's work was also not administrative or operational because she did not advise management; plan, negotiate, or represent the Defendant; purchase anything; promote sales; promote business research and/or control.

38. Gonzalez performed absolutely no financial analysis for the Defendants at all, and only spoke with their tenants to obtain information to pass along to others.

39. Gonzalez's tasks were not important enough to be of substantial importance to the employer.

40. Concerning the exercise of discretion, Gonzalez never compared or evaluated possible courses of conduct and acted or made a decision after the various possibilities were considered, much less discretion that was real and substantial with respect to matters of consequence.

41. Rosario and Gonzalez were all given tasks that were designed to facilitate the real estate business of the Defendant, such as legal assistant and property manager.

42. For some of the overtime hours that were worked, Defendant provided vouchers, in lieu of overtime, to Rosario and Gonzalez and the similarly situated opt-in Plaintiffs and others similarly situated so that they could receive "massages" or meals.

43. Defendant obtained hundreds of such vouchers, and gave them out to employees and others for "massages" in lieu of overtime as additional compensation.

44. Gonzalez filed a Notice of Consent to join the case currently pending *Blake v. James Batmasian, et al.*, Case No. 15-81222 in the Southern District of Florida on or about March 16, 2016 by filing a Notice of Consent. The Court issued a ruling holding that Gonzalez could not prosecute her claims in that case on or about September 15, 2016 and also did not allow her to intervene. *See* [D.E. 274]. Gonzalez requests that the statute of limitations in this case run back in time 3 years from the date that she submitted her Notice of Consent in the *Blake* case (March 16, 2015), because the filing of a notice of consent tolls the statute of limitations.

45. The Defendant intentionally failed to pay overtime to Plaintiffs to simply cheat them out of their wages, and the Defendant and its representatives knew that Plaintiffs were working overtime, and that federal law requires employees to be compensated at time and one-half per hour for overtime pay, and the Defendants received advice from Scott Rothstein and Stuart Rosenfeldt warning them that positions like Gonzalez's was non-exempt, and that employees like Rosario should not be made to work off of the clock.

46. In the course of employment with Defendant, Rosario and Gonzalez worked the number of hours required of them, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek (only Rosario was paid for some overtime hours and at that it was very few).

47. Plaintiffs, Rosario and Gonzalez regularly worked in excess of forty (40) hours per workweek.

48. The Defendant is not going to have accurate records of hours worked, because it required hours worked off of the clock (for Rosario) and/or kept no records of the hours worked by Gonzalez, but rather attempted to compensate the Plaintiffs for some of the overtime hours via the provision of the vouchers as described above as bonus monies. Gonzalez received paychecks stating that the pay was to compensate her for their first 40 hours worked, with no compensation for any of the overtime hours worked, as the paychecks merely stated 40 units or hours, with the wages that the Defendant intended to compensate Gonzalez for those 40 hours, with no mention as to the number of actual hours worked.

49. Rosario and Gonzalez have retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay them a reasonable fee for their services.

50. Rosario and Gonzalez are entitled to their reasonable attorneys' fees for prosecuting this action, whether or not they are the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

51. Rosario and Gonzalez re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 50 above as though fully set forth.

52. Rosario and Gonzalez are entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

53. By reason of the intentional, willful, and unlawful acts of Defendant, Rosario and Gonzalez have suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

54. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Rosario and Gonzalez are entitled to

liquidated damages as provided in § 216 of the FLSA, and are entitled to recover damages for three (3) years.

55. The willfulness includes deliberate violations of the Fair Labor Standards Act, as the Defendant has been sued off and on over the years for overtime, has not denied that it was the employer of its employees, and settled the cases, and significant evidence in the case and in the Blake case demonstrates that Defendant is violating the FLSA intentionally.  Further, the Defendant employed numerous workers performing manual labor to modify and rehabilitate tenant space, and the Defendant refused to pay any of them overtime, so the Defendant paid these workers for their first 40 hours, and any overtime hours worked are paid at a straight-time rate by John L. Management, L.L.C., which is a limited liability company owned by John Lopresti, who is a close personal friend of the Defendant, even though all of the work is performed for and the laborers are employed by the Batmasians.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Plaintiffs, and all those similarly situated, demand judgment against Defendant for the wages and overtime payments due them for the hours worked by them for which they have not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated:   October 9, 2016

`

Respectfully submitted,

By: s/ *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485

Respectfully submitted,

By: s/ *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
Chelsea A. Lewis
Fla. Bar. No. 111607
clewis@gkemploymentlaw.com
Glasser & Kleppin, P.A.
*Attorneys for Plaintiff*
8751 West Broward Blvd, Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
'       Fax: (954) 474-7405
Secondary E-Mails:   esinclair@gkemploymentlaw.com
dcano@gkemploymentlaw.com