## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:16-cv-81696-MIDDLEBROOKS

PATRICIA GONZALEZ, and
LESHA ROSARIO,

      Plaintiffs,

v.

JAMES BATMASIAN, and
MARTA BATMASIAN,

      Defendants.

_____/

## OMNIBUS ORDER ON PARTIES' MOTIONS RELATING TO ATTORNEY'S FEES AND COSTS

THIS CAUSE comes before the Court upon the following motions: Plaintiff Patricia Gonzalez's ("Gonzalez") Motion to Stay all Issues Associated with Attorneys' Fees and Costs ("Motion to Stay"), filed June 8, 2017 (DE 163); Defendants James Batmasian and Marta Batmasian's ("Defendants") Motion for Bill of Costs ("Defendants' Bill of Costs"), filed June 14, 2017 (DE 168); Gonzalez's Motion to Tax Costs ("Plaintiff's Bill of Costs"), filed July 14, 2017 (DE 190); Gonzalez's Motion for Attorney's Fees against Defendants ("Gonzalez's Motion for Fees"), filed July 14, 2017 (DE 191); and Defendants' Motion to Determine Entitlement to and Amount of Attorney's Fees against Plaintiff Lesha Rosario and her Counsel ("Defendants' Motion for Fees"), filed on July 14, 2017 (DE 192). I consolidate review of these motions for convenience but address each in turn.

### A. Motion to Stay

Gonzalez requests that the Court stay any determination of attorney's fees and costs because she and her co-plaintiff, Lesha Rosario ("Rosario"), have appealed the judgment entered

against Rosario[1] and anticipate that Defendants will also appeal the judgment in Gonzalez's favor.   Gonzalez notes that because the Court of Appeals may reverse or modify these judgments, and because she anticipates that her counsel will incur additional fees at the appellate level, the Court may have to vacate certain awards and the Parties may have to file supplemental motions for fees.   Therefore, she argues, it would be preferable to reserve any accounting of fees and costs until after the appeals process has been completed.

Courts in this district do not typically stay resolution of fee and cost issues pending appeal. *See Pretka v. Kolter City Plaza II Inc.*, No. 09-80706, 2013 WL 7219294, at *1 (S.D. Fla. Sept. 11, 2013) (Marra, J.).  Nor do the local rules contemplate such stays. *See* S.D. Fla. L. R. 7.3(a)(1) (requiring parties to file motions for attorney's fees and non-taxable costs "within sixty (60) days of the final judgment . . . regardless of the prospect or pendency of supplemental review or appellate proceedings").   Accordingly, I decline to stay review of the fee and cost motions.

### B. Defendants' Bill of Costs

Under Fed. R. Civ. P. 54(d)(1), a "prevailing party" is entitled to its costs unless "a federal statute, [the Federal] [R]ules, or a court order provides otherwise."   In this case, there were distinct FLSA claims pursued by two plaintiffs, one of whom – Gonzalez – obtained a jury verdict in her favor, the other of whom – Rosario – lost a Rule 50 Motion for Judgment as a Matter of Law for failing to appear at trial.   "Where two causes of action, each by a different plaintiff and each against the same defendant, are consolidated for trial, and but one plaintiff is successful, the successful plaintiff is entitled to costs, and defendant is entitled to costs against the unsuccessful plaintiff." *Modick v. Carvel Stores of N.Y., Inc.*, 209 F. Supp. 361, 363 (S.D.N.Y. 1962); *see also Bryant v. Whalen*, No. 88 C 4834, 1992 WL 198946, at *2 (N.D. Ill.

---

[1] Plaintiffs also appeal certain other of the Court's orders and rulings.  (*See* DE 172).

Aug. 12, 1992) (applying *Modick* rule expressly in the context of defendants' Rule 54(d) bill of costs following a trial where most plaintiffs lost but one prevailed on a single claim). Because the Court granted Defendants' Rule 50 Motion with respect to Rosario's FLSA claim (DE 157), Defendants are the prevailing party as against Rosario. Defendants request that the Court tax costs associated with defending against her claim. Specifically, they itemize the costs incurred for ordering transcripts of depositions taken of parties and witnesses connected to Rosario. Rosario responds that costs should be denied because she is indigent. As proof, she attaches an affidavit describing her financial and employment status, her special expenses, and her reliance on government benefits. (DE 188-1).

Although the prevailing party is presumptively entitled to its costs, the district court is vested with some discretion "to decide otherwise." *Chapman v. Al Transport*, 229 F.3d 1012, 1038 (11th Cir. 2000). In varying from Rule 54, the Court may consider, among other factors, the non-prevailing party's "financial status" and the attending hardship an award of costs may impose. *Id.* at 1039. But if the Court is to consider this factor, the non-prevailing party must provide "substantial documentation of a true inability to pay." *Id.* Moreover, even when the Court finds that the non-prevailing party's indigence merits relief from having to pay the full amount of costs, it cannot discharge the cost award entirely. *Id.* Some cost award must still be imposed to uphold the "deterrent purpose of the statute." *Id.* (quoting *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982)).

Defendants correctly point out that an affidavit containing nothing more than verbal representations of indigence is insufficient to satisfy the non-prevailing party's evidentiary burden. *Ang v. Coastal Int'l Sec., Inc.*, 417 F. App'x 836, 839 (11th Cir. 2011) (finding that district court "properly found that [non-prevailing party's] affidavit and [] IFP status did not constitute substantial evidence of [] inability to pay"). Rosario's only proof of indigence is just

such an affidavit. However, I do not agree that the Court should deny Rosario relief from costs out of hand. Additional documentation may confirm her representations. Therefore, Rosario shall, by August 28, 2017, file an amended affidavit attaching any financial statements or paperwork (redacted where necessary) evidencing her income, expenses, and reliance on government benefits. In the meantime, Defendant's Bill of Costs is stayed.

### C. *Gonzalez's Bill of Costs*

Gonzalez also filed a motion to recover costs, as she obtained a jury verdict in her favor (DE 148) and was therefore the prevailing party with respect to her FLSA claim. Defendants argue that Gonzalez may not recover costs because, among other reasons, her motion was not timely filed.

Under the Local Rules, "[a] bill of costs pursuant to 28 U.S.C. § 1920 shall be filed and served within thirty (30) days of entry of final judgment or other appealable order that gives rise to a right to tax costs . . . ." S.D. Fla. L. R. 7.3(c). Failure to abide by this rule is grounds for disallowing the recovery of costs. Here, the Court entered a Final Judgment in Gonzalez's favor on May 17, 2017. (DE 161). Gonzalez filed the instant motion on July 14, 2017 (DE 190), 58 days after judgment was entered and therefore well beyond the time permitted to file a bill of costs.

In her Reply brief, Gonzalez attempts, unpersuasively, to avoid the implications of Rule 7.3. First, she argues that her motion is not really a bill of costs pursuant to § 1920, but in fact a motion to recover a more expansive set of costs allowed under other statutes. That kind of motion, the argument goes, is governed instead by the 60 day time limit set forth in Local Rule 7.3(a), which applies to "attorneys fees and/or non-taxable expenses and costs." S.D. Fla. L. R. 7.3(a). In support, Gonzalez notes that her underlying motion states that she "is entitled to certain costs pursuant to 29 U.S.C. § 216(b), and 42 U.S.C. § 1988." (DE 190 at 4). She also

4

cites *Dowdell v. City of Apopka*, for the proposition that "where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply." 698 F.2d 1181, 1188 (11th Cir. 1983).

First, while the motion indeed referenced 29 U.S.C. § 216(b) and 42 U.S.C. § 1988, it did so merely in passing. None of the items Gonzalez sought to be taxed strayed from the list of taxable costs under § 1920.[2]   Second, even if Gonzalez is seeking costs beyond those contemplated by § 1920, she is not entitled to them. *Dowdell* is inapposite because that case dealt only with costs that may be awarded to a prevailing plaintiff under 42 U.S.C. § 1988, which permits cost recovery above and beyond those provided in § 1920 only with respect to specifically enumerated statutes. *See* 42 U.S.C. § 1988(b) (listing statutes). Gonzalez's sole claim was for recovery of overtime wages under the FLSA (DE 1) and the FLSA is not among the statutes listed in § 1988(b). In fact, the Eleventh Circuit has expressly held that the "costs of action" recoverable under the FLSA are limited to those enumerated in § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988); *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 687 (11th Cir. 2011) (in FLSA actions, "costs taxable in favor of a prevailing party are limited to those authorized in 28 U.S.C. § 1920"). Thus, no matter how she chooses to characterize it, her motion is, in substance, a bill of costs under § 1920.

Next, Gonzalez argues that Defendants failed to confer over any timeliness objection, implying that Defendants therefore waived any such objection. But by Gonzalez's own admission – and as confirmed in the attached email – counsel for Defendants explained during conferral that "Plaintiff Gonzalez may not have timely served the fee and cost claims." (DE 205-1). Moreover, even had Defendants' counsel declined to bring this issue to Gonzalez's counsel's

---

[2] Indeed, Plaintiff complains in Reply that Defendants are taking advantage of her for offering "a conservative costs petition" that "forgo[es] seeking many types of litigation expenses that she incurred." (DE 205 at 2).

attention, that omission would not insulate Gonzalez from the 30 day time limit.  The Local Rules' conferral requirement was designed to allow parties to resolve any disagreements about expenditures amongst themselves and adjust their bills of costs accordingly.  The issue of timeliness is a procedural bar to recovery altogether.  The non-prevailing party is therefore under no duty to confer about any planned objections based on timeliness.

Finally, the Reply brief stresses the fact that the retainer agreement between Gonzalez and her counsel, Chris Kleppin ("Mr. Kleppin"), makes her accountable to his firm for any unrecovered costs.  But the private arrangement between a litigant and her attorney has no bearing on entitlement to costs.  I see no reason for the brief to mention this fact other than to remind the Court that Gonzalez will suffer the consequences of Mr. Kleppin's mistake.  Mr. Kleppin may remedy this outcome by waiving the applicable provision of the retainer agreement – and I fully encourage him to do so.  Because Gonzalez's Bill of Costs was not timely filed, she is not entitled to recover any of her incurred costs.  Her motion is denied.

### D. Gonzalez's Motion for Fees

"In general, a prevailing FLSA plaintiff is entitled to an award of some reasonable attorney's fees and costs." *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009); 29 U.S.C. § 216(b).  Gonzalez is a prevailing plaintiff because she obtained a jury verdict in her favor on her sole FLSA claim for recovery of overtime wages.  The issue is the amount of fees she is entitled to recover.

### 1.  The Lodestar Method

Gonzalez requests the Court award her counsel $148,770.00, plus accrued interest, in attorney's fees.  This amount is ostensibly based on an application of the lodestar method for determining reasonable attorney's fees, as set forth in *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).  Under the lodestar method, the Court calculates

appropriate attorney's fees by "multiply[ing] hours reasonably extended by a reasonable hourly rate." *Id.* at 1299.

Gonzalez seeks fees for work performed by two attorneys – Mr. Kleppin and Chelsea Lewis ("Ms. Lewis") – and one paralegal, Elethia Sinclair ("Ms. Sinclair"). The motion explains that Mr. Kleppin billed at a rate of $400.00 per hour; Ms. Lewis billed at a rate of $250.00 per hour; and Ms. Sinclair billed at a rate of $100.00 per hour. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* The applicant for attorney's fees bears the burden to produce evidence that the requested rate corresponds to "prevailing market rates." *Id.* But the reviewing court may rely on its own expertise in evaluating what constitutes a reasonable rate. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

To establish the prevailing market rate, Gonzalez cites one case in which a court in this district has approved of a $400.00 hourly rate. *See CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598, 2008 WL 276057 (S.D. Fla. Jan. 31, 2008). But this case did not involve FLSA claims and thus there is no reason to believe this is the prevailing market rate for the services Gonzalez's counsel rendered. Gonzalez also attaches counsel's declaration (DE 191-1, "Kleppin Declaration"), which notes that courts have previously awarded him attorney's fees based on an hourly rate of $300.00 (*id.* at ¶ 8). The Kleppin Declaration also argues that $400.00 per hour is reasonable because the actual rate charged by an attorney is persuasive evidence of "his market rate." (*Id.* at ¶ 9) (citing *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000)). My own survey of cases in this district suggests that, in recent years, courts have found that $350.00 is a reasonable hourly rate for lead counsel in FLSA cases. *See, e.g., Asbun v. Resende*, No. 15-61370, 2016 WL 7635459, at *7 (S.D. Fla. Sept. 26, 2016) (Matthewman, M.J.) (finding senior counsel's $350 hourly rate to be reasonable); *Vazquez v. 1052 LLC*, No. 15-

22677, 2016 WL 541432, at *2 (S.D. Fla. Feb. 11, 2016) (Cooke, J.) (finding rate that varied between $150 and $350 per hour for most senior counsel reasonable); *Fiedler v. Anglin's Beach Cafe, LLC*, No. 15-60989, 2017 WL 1278632, at *1 (S.D. Fla. Apr. 3, 2017) (Zloch, J.) ($350 per hour for two co-counsel reasonable); *Gabon v. Kairos Logistics, Inc.*, No. 16-81523, 2016 WL 6594087, at *4 (S.D. Fla. Nov. 8, 2016) (Bloom, J.) ($350 for single attorney reasonable). Accordingly, I begin with a baseline of $350 per hour as the reasonable rate for a typical, experienced FLSA attorney.

Once a court identifies the prevailing market rate, it may adjust that rate up or down. *Perez v. Carey Int'l, Inc.*, 373 F. App'x 907, 913 (11th Cir. 2010) ("In determining a reasonable hourly rate, a court may assess the skills of the lawyers and quality of the representation in the case currently before the court."); *In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005) ("the district court [] had ample authority to reduce [the attorney's] fees"). The Eleventh Circuit encourages, without requiring, district courts to examine "any of the [twelve] factors" adopted in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as a basis for making an adjustment. *Norman*, 836 F.2d at 1299-1300; *see also Loranger*, 10 F.3d at 781, n.6 ("Although its balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate.").

Two *Johnson* factors are particularly relevant here: these are the "skill requisite to perform the legal service properly" and the "experience, reputation, and ability of the attorney[]." *Johnson*, 488 F.2d at 718-19. For reasons outlined below, I find that Mr. Kleppin's performance in this case – particularly at trial – departed significantly from the standard of skill and ability expected of a practicing attorney. That departure is amplified by Mr. Kleppin's past misconduct before other courts and tribunals. A downward adjustment is therefore warranted.

8

2.  <u>Hourly Rate: Adjustment Based on Mr. Kleppin's Trial Conduct</u>

Prior to trial, Mr. Kleppin's litigation conduct transformed a relatively straightforward FLSA case into bitter litigation impossible to resolve. Then, from start to finish, his conduct at trial demonstrated a disregard for the Federal Rules of Evidence. When given the opportunity during *voir dire* to ask questions to prospective jurors, Mr. Kleppin posed leading questions based on detailed fact patterns that incorporated his theory of the case. He then attempted to strike prospective jurors for cause on the basis of their ambiguous responses to those fact patterns.

His reliance on leading questions continued during his presentation of Gonzalez's case-in-chief – despite numerous warnings. When conducting direct examination of third party witnesses, Mr. Kleppin made a habit of proposing not only leading factual questions, but also legal conclusions.[3] In no instance did Mr. Kleppin demonstrate that the witness was adverse or hostile. *See* Fed. R. Evid. 611(c) (permitting leading questions only on cross-examination or "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party"). When a witness then contested the legal conclusion, Mr. Kleppin would attempt to impeach the witness by directing him to an excerpt of his deposition transcript. That excerpt invariably consisted of Mr. Kleppin's leading and compound question asked during the deposition – also meant to elicit a legal conclusion – to which the witness usually responded with a one word affirmative answer. The following exchange is representative:

> Mr. Kleppin: So in terms, then, of customarily and regularly directing the work of the maintenance people, you agree [Plaintiff] didn't do that?

---

[3] Usually, these conclusions were couched in the language of the Department of Labor's regulations to determine the applicability of an exempt employment category. Such phrasing calls for a legal conclusion because it addresses an issue with a "separate, distinct and specialized meaning in the law different from that present in the vernacular." *Torres v. Cty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).

Witness: She does do that.

Mr. Kleppin: If you could turn to page 47 of your deposition.

Witness: Uh-huh.

Mr. Kleppin: Line: 10: "Question: Is it fair to say, then, that [Plaintiff] is one of these bosses who – she is not customarily and regularly directing the work of the maintenance people like yourself, although you are saying that doesn't mean she's not my boss – she's my boss-man. Fair enough?" "Answer: Yes." Did I read your former testimony accurately?

Witness: Yes, you did.

(Trial Transcript, Day 1, 117:20-118:9). Even were it appropriate to assume that these witnesses were adverse to the plaintiff – which it sometimes is, *see Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1477-78 (11th Cir. 1984) (plaintiff's counsel allowed to lead witness who was employed by defendant on assumption she was identified with employer) – a lay witness can never be called upon to offer a legal conclusion. *Ojeda v. Louisville Ladder Inc.*, 410 F. App'x 213, 215 (11th Cir. 2010). And an attorney's impermissible attempt to elicit such a conclusion is only compounded when he seeks to *impeach* the witness for not subscribing to the desired conclusion. A third layer of impropriety occurs when the lawyer attempts to achieve this impeachment by pointing to the witness's response to a similarly prohibited line of questioning delivered at deposition. *See Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14-857-TBR-LLK, 2015 WL 4068405, at *4 (W.D. Ky. Jul. 2, 2015) ("deposition questions eliciting a legal conclusion from a lay witness lack a reasonable calculation to lead to the discovery of admissible evidence").

Perhaps in isolation these errors could be chalked up to merely sloppy litigation tactics. But they were not isolated. Far more disturbing was Mr. Kleppin's persistent effort to interject inflammatory allegations against Defendants through his direct examination of witnesses, as well

as in his opening and closing arguments.[4]  For instance, in his opening statement, Mr. Kleppin charged that one of Defendants' employees was an "undocumented" worker (Trial Transcript, Day 1, at 24:2-3, 10-12, 15-16), though this had no bearing on the case.  Similarly, during his direct examination of George St. Clair ("St. Clair"), an employee of Defendants, Mr. Kleppin asked leading questions – or really, just made contentions – about where St. Clair had met Defendant James Batmasian.  When St. Clair refused to take the bait, Mr. Kleppin offered, "It wasn't the Rock Hill Federal Penitentiary – [?]" (*Id.* at 102:5).  Even more egregiously, when I asked Mr. Kleppin out of the presence of the jury to explain the purpose of that question, he denied that it was meant to elicit the fact that Defendant James Batmasian had been to prison.  I do not credit Mr. Kleppin's alternative explanation that he merely sought to impeach St. Clair's credibility – given that St. Clair had just begun to testify and had made no untruthful statements – and find Kleppin's mendacity a further negative indicator of his ability and reputation as an attorney.

On the second day of trial, Mr. Kleppin called James Baker ("Baker"), Defendants' former controller and Mr. Kleppin's current client in an unrelated case against Defendants.  At Mr. Kleppin's urging, Baker began to testify about the performance of an audit for which no factual predicate had been laid.  In addition, Baker testified that the alleged audit was performed by an attorney retained by Defendants, thereby implicating the attorney-client privilege.[5]  Although I apprised Mr. Kleppin that he appeared to be trying to circumvent the rules of

---

[4] In the Order Denying Defendants' Motion for a New Trial (DE 194), I explained that while inappropriate, Mr. Kleppin's comments do not warrant a new trial because (a) any prejudice was cured by my instructions to the jury to disregard the inflammatory material and (b) there was sufficient admissible evidence for a reasonable factfinder to conclude that Gonzalez was not an exempt employee.

[5] During a conference with the attorneys to discuss the admissibility of the audit evidence, Mr. Kleppin also lodged unsupported accusations that the attorney in question was in prison.

evidence, he continued to ask Baker questions related to the alleged audit.[6]  Notably, Baker's personal animus against Defendants became clear when, during cross-examination, he raised the issue of James Batmasian's imprisonment without prompting and in a highly emotional outburst.

On the third day, in another bizarre episode, Mr. Kleppin accused Defendants and/or their counsel of having "whited out" – i.e., falsified – information on documents entered into evidence.  (Trial Transcript, Day 3, 103:19-20; 108:14-17; 111:2-5; 114:19-20).   Opposing counsel was later able to clarify the copying issues that created the supposed discrepancies between the relevant documents.  As I stated on the record, the professional response to a concern about document discrepancies would be to first discuss the issue with opposing counsel before lobbing serious allegations of misconduct in open court.  Mr. Kleppin chose to flout his professional obligations.  "In my estimation, the manner in which a lawyer interacts with opposing counsel and conducts himself before the Court is as indicative of the lawyer's ability and skill as is mastery of the rules of evidence."  *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1330 (S.D. Fla. 2000) (Middlebrooks, J.).

Finally, Mr. Kleppin's closing argument was rife with unsubstantiated speculation.  He posited a theory that Defendants' overtime violations were part of a scheme to avoid payroll taxes.   He also seems to have alluded back to the alleged basis for James Batmasian's imprisonment.  (Trial Transcript, Day 3, 192:8-10) ("People from Harvard who really know better, who have been in a lot of trouble before, as you have heard, with this stuff and in other things in their lives.").  Further, Mr. Kleppin referred again to the subject of illegal immigration, asserting that Defendants hired "illegal aliens . . . who aren't supposed to be working here." (*Id.* at 181:17-22).

---

[6] He also attempted to question Defendant Marta Batmasian about the same issue the following day.

Taken together, these incidents show Mr. Kleppin to be either ignorant or contemptuous of the Federal Rules of Evidence. He felt entitled to present his theory of the case – and all the salacious allegations that went with it – come hell or high water. Other courts have made similar findings about Mr. Kleppin. In another case in this district involving the same Defendants and a different plaintiff represented by Mr. Kleppin, Magistrate Judge Matthewman said, "Plaintiff's counsel, Chris Kleppin, has repeatedly attempted to interject irrelevant, scandalous, and impertinent matters into this litigation. Such conduct has invaded both the pleadings and the discovery process." *Blake v. Batmasian*, No. 15-81222 (S.D. Fla. Sept. 2, 2016) (DE 273 at 2) (Matthewman, M.J.), *adopted in part*, 2017 WL 657767 (Marra, J.); *see also In re Family Dollar FLSA Litigation*, No. 3:08MD1932, 2014 WL 4829025, at *2 (W.D.N.C. Sept. 29, 2014) ("Mr. Kleppin has behaved unethically in the instant litigation by filing and re-filing frivolous claims"); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1303 (S.D. Fla. 2007) (Seitz, J.) ("Kleppin issued highly improper discovery requests to Plaintiff in an obvious attempt to intimidate Plaintiff and her counsel into dismissing the lawsuit.").

More troubling still, courts in this district have appointed special masters "to help Kleppin learn the procedures for preparing for trial, including the organization of relevant evidence and the calculation of damages, and to help him learn to present the legal aspects of the case to a court." *Perez*, 373 F. App'x at 912 (citing *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1290, n.12 (S.D. Fla. 2008) (Seitz, J.)) (affirming district court's reduction of Mr. Kleppin's fee award). The special masters' tutelage has apparently fallen on deaf ears.

Aside from his predilection for raising inadmissible issues, Mr. Kleppin has also been admonished repeatedly for making untruthful or misleading representations to courts and clients. *See Bernal*, 479 F. Supp. 2d at 1340 (adopting magistrate's findings that Mr. Kleppin "engaged in bad faith in his representation of Defendants" when making uncorroborated allegations in an

13

affidavit and urging court, on that basis, to "severely sanction" plaintiff and opposing counsel); *Bernstein v. Boies, Schiller & Flexner LLP*, 236 F. App'x 564, 570 (11th Cir. 2007) ("Because of Kleppin's misleading and unnecessary filings, both [defendant] and the district court were forced to spend additional time and resources on this case."); *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-24432, 2012 WL 1534488, at *9 (S.D. Fla. 2021) (Altonaga, J.) (describing Mr. Kleppin's "remarkably cavalier attitude toward his ethical obligations" in representing a defendant adverse to former clients).[7]

Mr. Kleppin may be entitled to collect attorney's fees for successfully prosecuting this case. But he is hardly entitled to be paid at the rate of lawyer of "outstanding skill" – as he suggests (DE 191 at 7) – or even at the baseline rate for a lead attorney in an FLSA case. In light of his misconduct and unprofessional behavior, I find an hourly rate of $115.50 to be appropriate. This rate represents a two-thirds reduction of the standard hourly rate for lead counsel in an FLSA case. *See Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, No. 08-20128, 2011 WL 917742, at *6 (S.D. Fla. Jan. 24, 2011) (reducing lodestar by 72% based on Mr. Kleppin's performance) (O'Sullivan, M.J.), *adopted* 2011 WL 917838 (Huck, J.); *Powell*, 547 F. Supp. 2d at 1297 (reducing lodestar by 67% for same); *Lee*, 93 F. Supp. 2d at 1330 (in case involving attorney misconduct, court determined rate to be awarded by halving rate charged).

With regard to Ms. Lewis, the Motion represents that she has been an associate at Mr. Kleppin's firm since 2015, although there is no attached declaration from Ms. Lewis herself. $150.00 to $200.00 is typically an appropriate rate for a new associate. However, in this case I am not confident that Mr. Kleppin is capable of competently supervising an associate.

---

[7] Gonzalez argues that it would be unfair for the Court to examine court orders from prior cases in determining how much in attorney's fees to award Mr. Kleppin because it punishes him for conduct already dealt with. But Mr. Kleppin's past conduct is entirely relevant to the task at hand – evaluating his overall skill, experience, and reputation as an attorney. *Johnson*, 488 F.2d at 718-19.

Therefore, I will apply an hourly rate of $115.50 to Ms. Lewis's reasonably incurred time entries as well. Concerning Ms. Sinclair, I agree with Plaintiff that $100.00 per hour accords with the market rate for paralegal work.

3. Hours Expended

Defendants object to a number of Gonzalez's counsel's time entries. *See* (DE 212-1). They also argue that the entire subtotal of otherwise compensable time should be reduced by 50% because the records do not adequately distinguish time spent working on Gonzalez's claim from time related to Rosario's claim. Gonzalez represents that her counsel has excluded all time specifically devoted to Rosario and further offers to reduce the remaining subtotal by 10% to account for any residual work on Rosario's behalf reflected in work performed on both clients' behalf. Factoring in only the line item Rosario deductions, counsel's billing records reflect that Mr. Kleppin expended 393.4 hours working on this matter, Ms. Lewis expended 21.6 hours, and Ms. Sinclair expended 25.4 hours. (*Id.* at 27).

Under the lodestar method, a district court may reduce an attorney's fee award "[w]here the documentation of hours in inadequate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Documentation may be inadequate where the applying attorneys (1) include time for unnecessary work; (2) engage in block billing; (3) fail to describe tasks with sufficient specificity; or (4) spend excessive time on tasks. *Powell*, 547 F. Supp. 2d at 1294.

In this case, Gonzalez's counsel has already deducted most of the time spent on unnecessary tasks, as all but one of the entries related exclusively to Rosario have been removed.[8] Some unnecessary charges still remain. These include time spent: reviewing

---

[8] Counsel did not remove charges concerning Ms. Sinclair's preparation of discovery requests for Rosario's claim. (DE 212-1 at 4). I deduct that charge from the award.

deposition testimony of Stacey Blake ("Blake")[9] or communicating with opposing counsel regarding use of same (DE 212-1 at 10, 12); communicating with opposing counsel regarding potential global settlement between Defendants and all of Mr. Kleppin's clients (*id.* at 12, 20); and obtaining a copy of James Batmasian's criminal conviction (*id.* at 21). There are at least two entries that appear to be duplicative. (*Id.* at 4, 18).[10]  In addition, while Ms. Lewis may be compensated for adequately described work preparing for trial, because she did not participate in the proceedings themselves, she cannot be compensated for merely attending the trial. (*Id.* at 24-25). Nor may she recover attorney's fees for time performing administrative tasks, such as "coordinat[ing] [c]ar service." (*Id.* at 22). I do not include any of these items in the fee award.

The submitted time records also contain a number of time entries that do not describe the work performed with sufficient detail. Many of these entries are also for large blocks of time, which may also make them excessive. But it is impossible to tell how excessive, given their vagueness. Accordingly, I subtract time spent "review[ing] [] documents regarding ones that pertain to Gonzalez's case" (*id.* at 2), "review[ing] file" (*id.* at 12, 16), "review[ing] e-mails" (*id.* at 13), "review[ing] and research[ing] possible evidentiary issue[,] particularly use of 801(d)(2)"[11] (*id.* at 21), "prepar[ing] for trial" or "Calendar Call" (*id.* at 21-24), and "communicat[ing]" or "email[ing]" affiants, clients, and each other for undisclosed purposes (*id.* at 23-24).

---

[9] Blake is another former employee of Defendants and a client of Mr. Kleppin. Mr. Kleppin planned to call Blake as a witness at trial but decided against it, given the time restrictions I imposed. There is no evidence Blake's testimony would have been relevant to Gonzalez's claim.
[10] There are two entries on January 5, 2017 for review of order on motion for extension of time (*id.* at 4) and two entries on March 31, 2017 about drafting an email to opposing counsel, the second of which appears to contain the descriptive information missing in the first (*id.* at 18).
[11] If I had to guess, this entry probably relates to Mr. Kleppin's efforts to characterize Baker as an "agent" of Defendants, so as to permit him to testify about the alleged audit. As discussed on the record at trial, not only did this theory impinge on attorney-client privilege, it clearly contradicted the known facts – namely, that Baker was not the custodian of the alleged documents.

16

In addition to issues of necessity and vagueness, there are also billing entries that are clearly excessive, especially compared to the quality of the associated work product. For instance, Mr. Kleppin spent a significant amount of time reviewing documents and depositions from his other cases against Defendants in order to formulate Gonzalez's claims or present an argument with respect to willfulness. (*Id.* at 1-2). But as revealed at trial, the "evidence" stemming from other cases was tangential at best and prejudicial at worst. Of course, an attorney need not usually prove time spent of a given task was integral to the ultimate success of a claim in order to recover the corresponding fees. But especially in light of Mr. Kleppin's misuse of supposed evidence from related cases, I find these expenditures excessive. Time spent on these issues totaled 10.9 hours. I award fees for only 2.7 hours, or approximately one quarter of this time. In a related vein, I find that Mr. Kleppin spent an inordinate amount of time preparing for and deposing third party witnesses, who – based on the trial tactics described above – often contributed little to the evidence presented at trial, or did not appear at all. (*Id.* at 11, 20, 23). Entries for these tasks total 33.5 hours. Counsel is entitled to 8.4 of these hours (again, approximately a quarter of the time invested). Finally, I conclude that Mr. Kleppin expended excessive time – 21 hours – preparing a motion for summary judgment, which largely construed fact-intensive issues as appropriate for resolution as a matter of law. (*Id.* at 12-13). Counsel is entitled to 10.5 hours, or half the time invested on the motion.

Accounting for these deductions, Mr. Kleppin expended 282 hours performing compensable legal work (out of a claimed 393.4 hours). Ms. Lewis expended 6.8 hours doing the same (out of a claimed 21.6 hours). Ms. Sinclair expended 23.7 hours in compensable paralegal work (out of a claimed 25.4 hours).

4. Reasonable Attorney's Fees in this Case

Applying the individual hourly rates set forth above, Gonzalez's counsel would otherwise be entitled to $35,726.40 in attorney's fees. Gonzalez offers to deduct 10% from the subtotal to account for residual Rosario work. Defendants request a 50% reduction. Based on my review of the record, I think it fair to say that at least 20% of the work that went into drafting dispositive motions and other major tasks for which no specific plaintiff was identified related to Rosario's claims. Therefore, a global 20% reduction of the above figure, amounting to $7,145.28, is warranted. Accordingly, I award Gonzalez $28,581.12 in attorney's fees. And indeed, this figure seems far more consistent with the amount of effort it should have taken to prove Plaintiff's fairly narrow overtime claim than the amount actually billed.

Gonzalez also requests interest on any fees awarded. The Eleventh Circuit holds that the imposition of "post-judgment interest on awards of attorneys' fees and costs in an FLSA case" is "appropriate." *Martinec v. Party Line Cruise Co.*, 350 F. App'x 406, 408 (11th Cir. 2009). Interest runs from the date the underlying merits judgment was entered. *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 803 (11th Cir. 2012). Therefore, post-judgment interest will accrue on the award from May 17, 2017, the date of the merits judgment in Gonzalez's favor. (DE 161).

### E. *Defendants' Motion for Fees*

Defendants seek to assess attorney's fees against Rosario and her counsel pursuant to 28 U.S.C. § 1927. Section 1927 permits an award of attorney's fees to one side when opposing counsel "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The individual who multiplied proceedings is "personally" responsible for the related fees, expenses, and costs. *Id.* Defendants argue that Mr. Kleppin has multiplied the proceedings in this case in such a manner, especially with regard to his pursuit of Rosario's claim.

18

Defendants first seek to extract excess fees from Rosario. Section 1927 does not provide any authority to assess fees against a client for her attorney's bad faith conduct. Therefore, the motion is denied with respect to Rosario. Defendants next argue that Mr. Kleppin should be held personally accountable for fees incurred as a result of Rosario's failure to appear at deposition and the trial preparation expended to defend against her claim. Their Reply brief also discusses Mr. Kleppin's conduct at trial. As Plaintiff points out, the Court has already found no want of good faith in any of the pretrial discovery activities that form the basis for the instant motion. (DE 95).[12] With respect to the trial, it is true that Mr. Kleppin flouted the Rules of Evidence and conventions of professional conduct. *See supra*, Section D. But those acts were in connection with Gonzalez's claims, not Rosario's. Further, the impropriety of Mr. Kleppin's conduct goes to his skill, experience, and reputation as an attorney, not to whether he multiplied proceedings unnecessarily. I have already incorporated those factors into my determination of Mr. Kleppin's hourly rate. Therefore, it is unnecessary – and would indeed be duplicative – to further penalize him through a § 1927 award. Accordingly, Defendants' Motion for Fees is denied.

### F. Conclusion

It is hereby **ORDERED** and **ADJUDGED** as follows:

(1) Plaintiff Patricia Gonzalez's Motion to Stay all Issues Associated with Attorneys' Fees and Costs (DE 163) is **DENIED**;

(2) Defendants James Batmasian and Marta Batmasian's Motion for Bill of Costs (DE 168) is **STAYED**. Plaintiff Lesha Rosario shall, by **August 28, 2017**, file an

---

[12] Given the fact that Rosario did not appear at trial, there is, in hindsight, some additional cause for speculating about how interested she ever was in prosecuting her claim. However, Rosario also appears to have been hindered by legitimate logistical difficulties that prevented her from traveling to this district for trial. Although she ultimately failed to prosecute her claim, I cannot, based on the record before me, determine that Rosario never intended to do so.

amended affidavit attaching any financial statements or paperwork (redacted where necessary) evidencing her income, expenses, and reliance on government benefits;

(3) Plaintiff Patricia Gonzalez's Motion to Tax Costs (DE 190) is **DENIED**;

(4) Plaintiff Patricia Gonzalez's Motion for Attorney's Fees against Defendants (DE 191) is **GRANTED IN PART** and **DENIED IN PART**.  The Court shall, by separate order, enter a judgment in Plaintiff Patricia Gonzalez's favor for **$28,581.12** in attorney's fees, plus post-judgment interest from May 17, 2017; and

(5) Defendants James Batmasian and Marta Batmasian's Motion to Determine Entitlement to and Amount of Attorney's Fees against Plaintiff Lesha Rosario and her Counsel (DE 192) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 16 day of August, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record